In re Edith Anna JENNINGS a/k/a Edith Anna Marino, Debtor.

Edith Anna JENNINGS a/k/a Edith Anna Marino, Plaintiff,

v.

Alexander COBLENTZ, Trustee, Defendant.

No. BK LV–83–0959.
Bankruptcy No. CV S–86–937 RDF.
Adv. No. 84–094.

United States District Court,
D. Nevada.

Feb. 29, 1988.

---

Barney C. Ales, John Peter Lee, Las Vegas, Nev., for debtor, plaintiff and appellee.

Brian K. Berman of Marquis & Haney, Las Vegas, Nev., for defendant and appellant.

## AMENDED ORDER

ROGER D. FOLEY, Senior District Judge.

### THE FACTS

On July 5, 1983 Edith Anna Jennings a/k/a Edith Anna Marino ("debtor") filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Nevada ("bankruptcy court"). On June 14, 1984 debtor filed an adversary proceeding in the bankruptcy court against Alexander Coblentz ("Coblentz") claiming that the interest charged on a pre-petition loan made by Coblentz to debtor was usurious. On July 25, 1986 judgment was entered in debtor's favor entitling debtor to recover $234,370.90.

On August 1, 1986 Coblentz filed a notice of appeal from the July 25, 1986 judgment. On August 11, 1986 Coblentz designated the record and issues to be considered on appeal by the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"). However, the clerk of the bankruptcy court did not issue the "Notice of Referral of Appeal to the Bankruptcy Appellate Panel" ("Notice

of Referral") or mail the transmittal form to debtor until August 20, 1986.[1] An explanatory sentence on the transmittal form attributes the delay to the "backlog of this Court."

On August 22, 1986 debtor filed with the bankruptcy court a counter designation of the record and issues to be considered on appeal. The BAP acknowledged, in a letter received and filed by the bankruptcy clerk on September 5, 1986, that the notice of appeal had been received and docketed.

On September 10, 1986 debtor filed with the clerk of the BAP an objection to reference of the appeal to the BAP. On October 2, 1986 Judge Elliot, acting alone, entered an order transferring the appeal to this court. A letter which accompanied the order stated that even though the debtor's objection was untimely, the appeal was being transferred to the district court. No explanation for the transfer was given. However, this court assumes that the transfer was allowed because of the bankruptcy clerk's delay in giving notice of the appeal and of its reference to the BAP.

At this point the parties determined that each would proceed to the Court of Appeals should the other prevail at the district court level. Both parties agreed that the proper course of action was to stipulate to a direct appeal to the Court of Appeals pursuant to 28 U.S.C. § 1293(b). However, there was some disagreement or confusion as to the form the stipulation should take.[2] On November 7, 1986 the parties filed a "Notice of Appeal by Agreement Directly to the Court of Appeals Under 28 U.S.C. § 1293(b)" the preparation of which, it is intimated, was guided by the clerk of the

1. A copy of the Amended Order Establishing and Continuing the Bankruptcy Appellate Panel of the Ninth Circuit, effective May 20, 1985, is mailed with the Notice of Referral. This ensures that the appellee is aware not only of the appeal, but also of appellate procedure; including the automatic reference to the BAP and the time within which appellee must object to review of the appeal by the BAP. *See also*, Local Rule 980–1(f).

2. On October 17, 1986 the parties *lodged* with the bankruptcy court a *stipulation and order*

transferring the appeal directly to the Court of Appeals. On October 22, 1986 they *filed* with the bankruptcy court a *stipulation* tranferring the appeal directly to the Court of Appeals. The October 17 document is identical to the October 22 document except that the "order" language contained in the October 17 document has been "crossed out" by hand and is thereby omitted from the document filed on October 22. The parties ultimately agreed upon a format and filed their notice of appeal to the Court of Appeals on November 7, 1986.

bankruptcy court.[3] On November 19, 1986 the clerk of the bankruptcy court transmitted to the clerk of the Court of Appeals a memorandum entitled "Memorandum Re: Filing Notice of Appeal To The Court of Appeals Under 28 U.S.C. § 1293(b)." On that same date the bankruptcy clerk, acting pursuant to Rule 8001(d)(1), entered an order vacating Coblentz' August 1, 1986 notice of appeal.[4] The bankruptcy clerk forwarded a copy of the order vacating Coblentz' notice of appeal to the clerk of the district court and on November 20, 1986 the district court clerk, also acting pursuant to Rule 8001(d)(1), entered an order dismissing the appeal from the district court.[5] On January 26, 1987 the Court of Appeals notified the parties that its jurisdiction over the appeal was questionable. Appellant Coblentz was ordered to voluntarily dismiss the appeal or show cause why it should not be dismissed for lack of jurisdiction. In his response, Coblentz acknowledged the jurisdictional defect and requested that the appeal be transferred to the BAP pursuant to 28 U.S.C. § 1693. On May 7, 1987 the Court of Appeals issued the following order:

> We have no jurisdiction over this appeal from bankruptcy court. The appeal is dismissed for lack of jurisdiction. We cannot transfer the appeal because the notice of appeal was not timely. Appellant may move in the district court for

reinstatement of the appeal he withdrew in reliance on this appeal and the stipulation of counsel.[6]

On September 17, 1987 Coblentz filed a motion with the district court to reinstate the appeal from the judgment of July 25, 1986.[7] It is this motion which is now before this court.

## DISCUSSION

### I. The Notice of Appeal

■ Rule 8002(a) requires that a party wishing to appeal a judgment of the bankruptcy court file a notice of appeal "with the clerk of the bankruptcy court within 10 days" after the date "of the entry of the judgment, ... appealed from." This time limit is jurisdictional and is strictly enforced. If a notice of appeal is not filed within the prescribed period, there is no appellate jurisdiction. *In re Souza*, 795 F.2d 855, 857 (9th Cir.1986); *In re Abdullah*, 778 F.2d 75, 77 (1st Cir.1985); *In re Universal Minerals, Inc.*, 755 F.2d 309, 310 (3rd Cir.1985); and *In re Ramsey*, 612 F.2d 1220, 1221–1222 (9th Cir.1980) (untimely appeal dismissed under former Rule 802 for lack of jurisdiction).

Rule 9006(a) explains that the day on which the judgment is entered is not included in the computation of the ten (10) day period but that the "last day of the period" is included in the computation "unless it is

---

**3.** The parties intimate that the clerk of the bankruptcy court assisted them with the procedural details and provided them with the proper format for the direct appeal. (Appellant's "Reply to Opposition to Motion to Reinstate Appeal" at p. 3) To the extent that this intimation is intended to create a basis for reliance upon the acts or statements of the bankruptcy clerk, this court rejects it. The bankruptcy clerk is not a licensed attorney—her function is different than that. The clerk and her staff process the paperwork of the bankruptcy court in accordance with the instructions and rules given them. It is not their responsibility to advise attorneys as to the proper procedure or to correct those who have chosen an improper procedure.

**4.** Rule 8001(d)(1) provides that "[O]n the filing of a notice of a direct appeal by agreement of the parties to the court of appeals under 28 U.S.C. § 1293(b), the clerk of the bankruptcy court shall enter an order vacating any prior notice of appeal to the district court or bank-

ruptcy appellate panel from the same judgment...."

**5.** Rule 8001(d)(1) further provides that "[I]f the appeal to the district court ... has been docketed, the clerk of the bankruptcy court shall forward to the clerk of the district court ... a copy of the order vacating the notice of appeal and on receipt thereof the clerk of the district court ... shall enter an order dismissing the appeal." The district court order dismissing the appeal was received by, and filed in, the bankruptcy court November 24, 1986.

**6.** *In re Edith Anna Jennings*, No. 86–15040, May 7, 1986.

**7.** On September 17, 1987 Coblentz also filed a motion to vacate the "Order Vacating Notice of Appeal Filed August 1, 1986" which had been entered pursuant to Rule 8001(d)(1). On October 21, 1987 Coblentz withdrew the motion.

a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." [8]

■ The judgment was entered on the bankruptcy court's docket Friday, July 25, 1986. The time period began running Saturday, July 26, 1986. The tenth day was Monday, August 4, 1986. Coblentz' notice of appeal was filed August 1, 1986 and was therefore timely.[9]

## II. Appellee's Objection

28 U.S.C. § 158(a) gives the district court jurisdiction to hear appeals from bankruptcy court. As an alternative, 28 U.S.C. § 158(b) authorizes the judicial council of a circuit to establish a bankruptcy appellate panel "to hear and determine, upon consent of all the parties," appeals from the bankruptcy court. Therefore, if the parties consent, appeal may be taken directly to the BAP.

The BAP's jurisdiction derives generally from 28 U.S.C. § 158(b)(1) and specifically from The Judicial Council of the Ninth Circuit's Amended Order Establishing and Continuing the Bankruptcy Appellate Panel of the Ninth Circuit, effective May 20, 1985, ("Amended Order") which states;

> When a notice of appeal is filed with the clerk of the bankruptcy court, the appeal shall be referred immediately to the bankruptcy appellate panel. All parties to the appeal shall be notified of the filing and reference within the time and in the manner provided for in Paragraph 3 of this order. Unless a party to the appeal files a written objection with the clerk of the bankruptcy appellate panel within twenty-one (21) days from the date of filing of the notice of appeal the parties will be deemed to have consented

to the hearing and the disposition of the appeal by the bankruptcy appellate panel pursuant to 28 U.S.C. § 158(b)(1).[10]

Amended Order at ¶ 2.

■ Coblentz' timely notice of appeal was filed August 1, 1986. Debtor then had 21 days in which to file a written objection with the clerk of the BAP. That time expired Friday, August 22, 1986. On that date, August 22, 1986, debtor filed with the bankruptcy clerk a counter designation of the record to be considered on appeal. Debtor subsequently filed an objection with the clerk of the BAP on September 10, 1986. The objection was untimely and Judge Elliot so stated. However, debtor claims that the bankruptcy clerk's failure to give notice of the appeal and reference within the time prescribed excuses the untimeliness of the objection. (Debtor's Objection to Referral to the Bankruptcy Appellate Panel and Motion to Transfer. pp. 2–3).

It is this court's position that the clerk's delay did not extend the time period for objection or otherwise excuse the objection's untimeliness. Instead, debtor is "deemed" to have waived her personal right to an Article III adjudication by not objecting within the time prescribed by the Amended Order and has consented to adjudication by the BAP. Therefore, Coblentz appeal should have remained with, and been disposed of by, the BAP. It need not have been transferred to this court.

Recognizing that this position warrants further explanation, this court will, in the pages that follow, discuss more carefully the concept of "jurisdiction by consent" and the propriety of implied or "deemed" consent. However, to put each of these topics in context it is helpful to first dis-

---

8. Rule 9006(a) was amended effective August 1, 1987 to exclude intermediate Saturdays, Sundays and legal holidays from the computation of time periods shorter than eleven (11) days. However, the amendment is not applicable in this case.

9. Coblentz' August 11, 1986 filing of his Designation of Record and Issues on Appeal ("Designation") was also timely filed. Rule 8006 requires that, within ten (10) days after filing the notice

of appeal, appellant must file a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Coblentz filed the Designation on the final day of the allowed time period.

10. Local Rule 980–1(e) contains identical language except that the language "in Paragraph 3 of this Order" is replaced by "in paragraph (f) of this Rule."

cuss the jurisdiction of the bankruptcy court to be certain that the nature and character of this jurisdiction are clearly understood.

## A. Bankruptcy Jurisdiction

### 1. *Northern Pipeline*

In January of 1980 Northern Pipeline Co. ("Northern") filed a voluntary petition for reorganization under The Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 ("the 1978 Act"). In March of that same year Northern filed an action in Bankruptcy Court against Marathon Pipeline Co. ("Marathon") alleging state law breaches of warranty and contract. Marathon moved for dismissal claiming that the 1978 Act "unconstitutionally conferred Article III Judicial power upon judges who" were not also granted Article III protections. *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 56–57, 102 S.Ct. 2858, 2863–2864, 73 L.Ed.2d 598 (1982).

*Northern Pipeline* did not produce a majority opinion. Justice Brennan wrote for a plurality of four (4) and Justice Rehnquist authored a concurring opinion joined by Justice O'Connor. These six (6) Justices concurred in the Court's judgment that Congress' grant of jurisdiction to the Bankruptcy Courts under the 1978 Act was too broad. *Id.* at 87, 91–92, 102 S.Ct. at 2880, 2881–2882.

### a) *The Plurality Opinion*

The plurality opinion addressed two (2) separate arguments: first, that Congress' Article I powers authorize the creation of courts not subject to or protected by Article III; and second, that the Bankruptcy Courts are merely adjuncts to the District Courts and therefore delegating certain adjudicative functions to the Bankruptcy Courts is consistent with Article III.

#### 1) Congress' Power to Create Legislative Courts

Addressing the first argument, the plurality set forth the Constitutional rule that "the 'judicial Power of the United States' must be reposed in an independent judiciary"—i.e., an Article III judiciary. *Id.* at 60, 102 S.Ct. at 2866. The plurality then interpreted the Supreme Court's prior decisions as revealing only three (3) narrow, discrete circumstances so "historically and Constitutionally" exceptional that Congress could vest Article I courts with jurisdiction to decide cases falling within these circumstances even though such cases were clearly within the bounds of Article III. The plurality explained that in these three (3) circumstances such exceptional grants of power accommodated rather than violated the above stated Constitutional rule. *Id.* at 64, 102 S.Ct. at 2867. These three (3) "narrow" and "exceptional" circumstances were Territorial Courts,[11] Courts Martial,[12] and The Public Rights Doctrine.[13]

---

**11.** "... the Framers intended that as to certain geographical areas, in which no State operated as sovereign, Congress was to exercise the general powers of government." *Northern Pipeline* at 64, 102 S.Ct. at 2868.

**12.** Congress' Article I power "[t]o provide and maintain a Navy," and "[t]o make Rules for the Government and Regulation of the land and naval Forces" coupled with the fact that the Fifth Amendment's requirement of presentment or a grand jury indictment before a person may be held to answer for a capital or otherwise infamous crime, contains an express exception for "cases arising in the land or naval forces," indicates an intent to allow military offenses to be tried by legislative courts. *Id.* at 66, 102 S.Ct. at 2868.

**13.** Although reluctant to precisely define the doctrine, the plurality stated that at a minimum

the doctrine extends only to matters arising "between the Government and persons subject to its authority...." *Id.* at 67–68, 102 S.Ct. at 2869. The plurality further stated that the doctrine could be partially explained by reference to the traditional principle of sovereign immunity, and partially by reference to the principle of separation of powers. Under the former, for example, a government may consent to suit, thus creating a right that would not otherwise exist. The latter acknowledges the historical understanding that certain prerogatives were reserved to the political branches of government. *Id.* at 67–68, 102 S.Ct. at 2869–2870. For example, matters involving customs laws have historically been reserved to the political branches of government. *Ex Parte Bakelite Corp.*, 279 U.S. 438, 458, 49 S.Ct. 411, 416, 73 L.Ed. 789 (1929).

The plurality concluded that the 1978 Act did not fall within any of the three (3) circumstances warranting an exceptional grant of power. *Id.* 458 U.S. at 71, 102 S.Ct. at 2871.[14] For that reason *Northern's* first argument failed.

### 2) The Bankruptcy Court as an Adjunct to the District Court

Addressing the second argument—that the Bankruptcy Court is merely an "adjunct" to the District Court—the plurality agreed that when Congress creates a substantive right it may prescribe how that right is to be adjudicated—this includes assigning to an adjunct functions that historically have been performed by Article III judges. *Id.* at 81, 102 S.Ct. at 2876. The Constitutional limitation on such Congressional assignments is that "the functions of the adjunct must be limited in such a way that 'the essential attributes' of judicial power are retained in the Article III court." *Id.* at 81, 102 S.Ct. at 2876 (Citing *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932); and *United States v. Raddatz,* 447 U.S. 667, 682, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980)).

However, Congress does not have the same discretion to assign adjuncts the power to adjudicate state law rights or other "rights not created by Congress." *Northern Pipeline* 458 U.S. at 81, 102 S.Ct. at 2876.

Because Northern's action against Marathon derived from state law rights and not from any right created by Congress, the plurality concluded that there was no justification for assigning the power to adjudicate Northern's claim to a non-Article III

court. Moreover, by making this unjustified delegation of judicial power, Congress "impermissibly removed ... 'the essential attributes of judicial power' from the Article III District Court," and vested them in a non-Article III adjunct. *Id.* at 85, 102 S.Ct. at 2878. Such a grant of jurisdiction created the potential for "unwarranted encroachment upon the judicial power of the United States" and could not be sustained. *Id.* at 84, 87, 102 S.Ct. at 2878, 2880. For this reason Northern's second argument failed.

### b) *The Holding of Northern Pipeline*

The plurality's opinion illustrates the perplexity associated with the jurisdiction of Article I courts but the basis for the plurality's decision is unnecessarily broad. The concurring opinion sets forth a narrower basis for decision than does the plurality opinion and thus articulates the holding agreed upon by a majority of the Supreme Court.[15] A majority of the Supreme Court, citing Justice Rehnquist's concurring opinion, has twice since stated the holding of *Northern Pipeline* as follows:

> ... Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.

*Thomas v. Union Carbide Agricultural Products,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985) (Arbitration scheme of the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. § 136 et

---

**14.** Bankruptcy Courts clearly were not Territorial Courts or Courts Martial. In discussing whether Northern's claim against Marathon fell within the scope of the Public Rights Doctrine the plurality explained that "restructuring of the debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages." *Northern Pipeline* 458 U.S. at 71, 102 S.Ct. at 2871. Because the substantive rights involved were state law contract rights and not matters "at the core of the federal bankruptcy power," they were not "Public Rights." However, this Court interprets the plu-

rality's distinction to mean that "core" bankruptcy issues are within the scope of the Public Rights Doctrine. *See, In re Price–Watson Co.,* 66 B.R. 144, 151 (Bankr.S.D.Tex.1986).

**15.** Chief Justice Burger joined Justice White's dissent but also wrote a separate dissenting opinion "to emphasize that, notwithstanding the plurality opinion, ... the Court's holding is limited to the proposition stated by Justice Rehnquist" in his concurring opinion. *Northern Pipeline Co.* at 92, 102 S.Ct. at 2882 (Burger, C.J. dissenting).

seq.] held not violative of Art. III.); [16] *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (CFTC held to have power, under Commodity Exchange Act [7 U.S.C. § 1 et seq.] to entertain state law counterclaims in reparations proceedings; grant of such power held not to violate Art. III); *See also, In re Daniels–Head & Associates,* 819 F.2d 914, 917 (9th Cir.1987).

### 2. The 1984 Amendments and "jurisdiction by consent"

The Supreme Court's judgment in *Northern Pipeline* was applied prospectively and was stayed to allow Congress time to "reconstitute the Bankruptcy Courts.... without impairing the interim administration of the bankruptcy laws." *Northern Pipeline* 458 U.S. at 88, 92, 102 S.Ct. at 2880, 2882. Congress responded, though not with excessive haste, by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 ("the 1984 Amendments").

Through the 1984 Amendments Congress made two basic changes. First, Congress modified the jurisdictional section to make clear that jurisdiction over bankruptcy cases was granted exclusively to the District Courts, 28 U.S.C. § 1334, with the District Court being given discretion to refer proceedings to the Bankruptcy Court. 28 U.S.C. § 157.[17] Second, Congress bifurcated bankruptcy jurisdiction into two types of proceedings—"core" and "non-core." 28 U.S.C. § 157; and *Northern Pipeline* at 83, 102 S.Ct. at 2877. In core proceedings a Bankruptcy Court can enter final orders and judgments. 28 U.S.C. § 158(b). However, in non-core proceedings Bankruptcy Courts may only enter proposed findings and conclusions which are reviewed de novo by the District Court.

In this way the District Court retains that "essential attribute" of judicial power; the power to render final judgments and issue binding orders. *Northern Pipeline* at 81, 102 S.Ct. at 2876; *Thomas* 473 U.S. at 584, 105 S.Ct. at 3335. In only one circumstance do the 1984 Amendments allow Bankruptcy Courts to enter final judgments in non-core proceedings; if the parties consent to having the Bankruptcy Court enter a final judgment with respect to their proceeding. 28 U.S.C. § 157(c)(2).

These two changes effectively cure the Constitutional defects of the 1978 Act because they address two separate safeguards implemented by Article III and by the Constitutional principle of separation of powers: 1) the litigants personal right to have claims decided by independent judges who are free from the potential influence of the other governmental branches, *Schor,* 478 U.S. at ——, 106 S.Ct. at 3256, 92 L.Ed.2d at 691; and 2) the disruption or erosion of the judicial branch within the tripartite constitutional scheme. *Schor,* 478 U.S. at ——, 106 S.Ct. at 3256–3257, 92 L.Ed.2d at 691–692; *Northern Pipeline,* 458 U.S. at 58, 102 S.Ct. at 2864, *Pacemaker Diagnostic Clinic of America v. Instromedix,* 725 F.2d 537, 544 (9th Cir.1984). Each of these safeguards protects a discrete element of the separation of powers principle. Because each safeguard is distinct in character—one being a personal right, the other an institutional safeguard—this court will discuss them individually.

### a) The Litigant's Right to an Article III Adjudication

Article III guarantees each federal court litigant an "independant and impartial adjudication" by an Article III judiciary free from the influence of other branches of government. *Schor,* 478 U.S. at ——, 106

---

**16.** In *Thomas* the Court backed away from the plurality's three-category analysis of Article I courts by stating that an absolute construction of Article III is not possible in this area of "frequently arcane distinctions and confusing precedents." *Thomas* 473 U.S. at 583, 105 S.Ct. at 3334. Also, the Court in *Thomas* specifically noted that the "public-rights" theory did not command a majority in Northern Pipeline. *Id.* at 586, 105 S.Ct. at 3336.

**17.** Under the 1978 Act the district courts were given jurisdiction over bankruptcy cases but the 1978 Act specifically provided that the bankruptcy courts "shall exercise all of the [bankruptcy] jurisdiction conferred ... on the district courts." 28 U.S.C. § 1471(a) and (c) (1982). The 1984 Amendments substitute discretionary reference to the bankruptcy court in the stead of the 1978 Act's mandatory exercise of bankruptcy jurisdiction. 28 U.S.C. § 157.

S.Ct. at 3256, 92 L.Ed.2d at 691; *Thomas,* 473 U.S. at 579–580, 105 S.Ct. at 3332; *Northern Pipeline,* 458 U.S. at 58, 102 S.Ct. at 2864; and *Pacemaker,* 725 F.2d at 541. The Supreme Court explained that;

> ... as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried.[18] (citations omitted). Indeed, the relevance of concepts of waiver to Article III challenges is demonstrated by our decision in Northern Pipeline, in which the absence of consent to an initial adjudication before a non-Article III tribunal was relied on as a significant factor in determining that Article III forbade such adjudication.

*Schor,* 478 U.S. at ——, 106 S.Ct. at 3256, 92 L.Ed.2d at 691.

█ In essence, the parties to an Article III case or controversy have a personal right to adjudication by an Article III judge. This right can be waived and the parties may consent to having their case adjudicated by a non-Article III tribunal. Though recently reiterated in *Schor* and *Thomas,* such "jurisdiction by consent"[19] has long been recognized by the Supreme Court. *See, Kimberley v. Arms,* 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1888). (A reference, by consent of the parties, of an entire case for the determination of all its issues, ..., is a submission of the controversy to a tribunal of the parties' own selection.); *Heckers v. Fowler,* 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1864), (Consent—in this case the parties' written agreement to refer the cause to a referee—does not directly involve the question of jurisdiction, but has respect to the mode of trial, as substituting the report of a referee for the verdict of a jury); *Alexandria Canal Co. v. Swann,* 46 U.S. (5 Howard) 83, 12 L.Ed. 60 (1847), (A trial by arbitrators, appointed by the court with the consent of both parties, is one of the modes of prosecuting a suit to judgment as well established and as fully warranted by law as a trial by jury). *See also, Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

█ It is this court's view that 28 U.S.C. §§ 1334 and 157 properly allow litigants in a non-core proceeding to consent to a final adjudication by the Bankruptcy Court.

### b) *Disruption or Erosion of the Judicial Branch*

█ Unlike the litigants' personal right to an Article III adjudication "the component of the separation of powers rule that protects the integrity of the constitutional structure ... cannot be waived by the parties, ..." *Pacemaker* 725 F.2d at 544. *See, also, Schor,* 478 U.S. at ——, 106 S.Ct. at 3255, 92 L.Ed.2d at 690. The separation of powers doctrine prohibits both improper interference with the independent power of one branch by another and the improper delegation, by one branch, of its own pow-

---

**18.** The Ninth Circuit Court of Appeals noted in *Pacemaker* that the Supreme Court has allowed criminal defendants to waive even fundamental rights: the right to be free from self-incrimination, *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), the right to counsel, *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), the right to be free from unreasonable searches and seizures, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the right to a speedy trial, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the right to a jury trial, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and even, by pleading guilty, the right to trial itself. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). *Pacemaker,* at 543.

**19.** This notion of "jurisdiction by consent" does not violate the maxim that subject matter jurisdiction may not be conferred by consent. Consent in this context is not consent to subject matter jurisdiction but, rather, waiver of the right to an Article III forum. *In re Nell,* 71 B.R. 305, 310, n. 4 (D.Utah 1987). Jurisdiction over core proceedings derives directly from Congress' grant of bankruptcy jurisdiction to the district court. Jurisdiction over non-core proceedings derives from the fact that the proceeding is ancillary to the district court's bankruptcy jurisdiction. Consent to having non-core proceedings adjudicated by the bankruptcy court does not go to the jurisdiction of "the district court as an entity but to the judicial officer within the court" who adjudicates the proceeding. *Wharton–Thomas v. U.S.,* 721 F.2d 922, 926 (3rd Cir.1983).

er. *Nixon v. Administrator of General Services*, 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), (Interference or delegation is improper if it prevents, or substantially impairs, the performance by one branch of its essential role in the constitutional system.).

In the case of Bankruptcy Judges, interference by a collateral branch is not a genuine threat. Bankruptcy judges are appointed by the Court of Appeals, 28 U.S.C. § 152(a), and are subject to removal by that same body, rather than by the Legislative or Executive Branch. 28 U.S.C. § 152(e). Congressional salary adjustments provide the only opportunity for collateral branch interference. 28 U.S.C. § 153. However, this court believes that such interference could be effectively countered by 28 U.S.C. § 157(d) which allows the District Court to withdraw the reference "on its own motion ... for cause shown." Thus, the only separation of powers concern inherent in the jurisdictional structure of the 1984 Amendments is the potential for "the erosion of the central powers of the judiciary by permitting it to delegate its own authority." *Pacemaker*, 725 F.2d at 544.

This concern about improper delegation is tempered by the Constitution itself which "contains explicit, textual authority for the judiciary to appoint its own officers, if the Congress so permits." *Id.* at 545 (Citing *Go–Bart Importing Co.*, 282 U.S. 344, 352–353, 51 S.Ct. 153, 156, 75 L.Ed. 374 (1931); and *Rice v. Ames*, 180 U.S. 371, 378, 21 S.Ct. 406, 409, 45 L.Ed. 577 (1901)).[20] "This Constitutional authority for the exercise of the appointment power by Article III judges implies an important dimension to the judicial power: the judiciary is permitted a degree of control and discretion for the design and shape of its own system." *Id.* at 545. *See also, Wharton–Thomas*, 721 F.2d 922, 927.

The 1984 Amendments implement this Constitutional power to delegate by authorizing the Article III judiciary to appoint Bankruptcy Judges and to refer to them core and non-core proceedings.[21] This "delegation" of judicial authority does not impair the district court's performance of its role within the Constitutional system. Instead, it facilitates performance of that role by allowing discretionary delegation of specific tasks to specialized tribunals created to perform those specific tasks. This allows efficient and effective disposition of a sophisticated and voluminous case load.

■ This court is satisfied that the district court's delegation of some of its authority to a non-Article III tribunal is proper and that there is no Constitutional bar to litigants' consenting to Bankruptcy Court or BAP adjudication of non-core proceedings. However, there remains the issue of whether a party may be "deemed" to consent—i.e., waive the personal right to an Article III adjudication—by failing to act within a specified time. In the present case the specific issue is whether the debtor is deemed to have consented to the BAP's adjudication of the appeal by failing to object within the time allowed.

### 3. *Deemed Consent* [22]

■ The Ninth Circuit en banc panel in *Pacemaker*, in holding Constitutional the consensual reference of civil cases to a

**20.** Article II, section 2, provides that "the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

**21.** The establishment of the BAP is another example of the implementation of this Constitutional power to delegate.

**22.** Even though there is a distinction between the functions of the bankruptcy court and the BAP, the analysis in this section is applicable to both an adjudication by the bankruptcy court and to the BAP's appellate review. Unlike the right to an initial adjudication, there is no Constitutional right to an appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); and *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Only after an appeal of right has been statutorily granted do the Due Process and Equal Protection clauses become operative. *Pennsylvania v. Finley*, 481 U.S. ——, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). It is this court's view that the purely statutory right to an appeal may be waived in the same manner that a personal Constitutional right to an Article III adjudication may be waived.

magistrate explained that "[T]he waiver of personal rights must, ..., be freely and voluntarily undertaken." *Pacemaker,* 725 F.2d at 543. Specifically, the court explained that "[T]he purported waiver of the right to an Article III trial would not be an acceptable ground for avoiding the constitutional question if the alternative to the waiver were the imposition of serious burdens and costs on the litigants." *Id.* at 543. While this court is aware of no completed studies comparing the respective time periods for the processing and disposition of appeals in the district court and in the BAP, experience indicates that there is not a substantial time or cost difference between the two procedural avenues. If there is an advantage to processing an appeal through the BAP it is not the avoidance of "serious burdens and costs" but, rather, the advantage inherent in having one's rights adjudicated by a particularized tribunal specially created to perform the task.

Moreover, the concern about the voluntariness of a waiver does not mean that consent to Bankruptcy Court adjudication cannot be implicit. On the contrary, the teaching of *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), is that one may implicitly consent to bankruptcy jurisdiction by filing a counterclaim in Bankruptcy Court.[23] This teaching was recently reiterated by the Supreme Court in *Schor;*

> Even were there no evidence of an express waiver here, Shor's election to forgo his right to proceed in state or federal court on his claim and his decision to seek relief instead in a CFTC reparations proceeding constituted an effective waiver.

*Schor,* 478 U.S. at ——, 106 S.Ct. at 3257, 92 L.Ed.2d at 692. *See also, In re Sun West Distributors, Inc.,* 69 B.R. 861 (Bankr.S.D.Cal.1987); *In re STN Enterprises, Inc.,* 75 B.R. 470 (Bankr.D.Vt.1987); *In re Lombard–Wall Inc.,* 44 B.R. 928 (Bankr.S.D.N.Y.1984). Addressing the issue directly the Ninth Circuit has explained

that the jurisdictional structure of the 1984 Amendments does not require explicit consent. "The fact that Congress failed to include any provision for explicit consent in the 1984 Act indicates that consent implied from the parties' actions is sufficient." *In re Daniels–Head & Associates,* 819 F.2d at 918–919; *See also, DuVoisin v. Foster (In re Southern Industrial Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987). Referring specifically to *Pacemaker's* concern for free and voluntary consent, the court said;

> As for *Pacemaker's* requirement that consent be "freely and voluntarily undertaken," 725 F.2d at 543, appellant could have objected to the bankruptcy court's jurisdiction any time after *Marathon* [458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598] became effective and the Emergency Rule adopted. Its failure to object to the bankruptcy court's jurisdiction constitutes consent to that jurisdiction.

*In re Daniels–Head & Associates,* 819 F.2d at 919.

With respect to the BAP's jurisdiction, the Amended Order provides that unless a party files a written objection with the clerk of the BAP within 21 days after the Notice of Appeal is filed, that party is "deemed" to have "consented" to the BAP's jurisdiction. At least one court has labeled such implied consent, or automatic waiver, as "jurisdiction by ambush." *In re Nanodata Computer Corporation,* 52 B.R. 334 (Bankr.W.D.N.Y.1985). This court fails to see the perceived inequity.

Automatic waiver of a personal Constitutional right is not a novel concept. The Seventh Amendment guarantees a right to jury trial. However, Rule 38(d) of the Federal Rules of Civil Procedure provides for automatic waiver of the jury trial right if a party does not make a timely written demand for a jury trial. This is analogous to the Amended Order's provision for automatic waiver of the personal right to an Article III adjudication. Also, in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the U.S. Supreme Court held that failure to file objections to a magistrate's report waives the right to ap-

---

**23.** A counterclaim was filed in Bankruptcy Court to recover a preference made voidable by the provisions of the 1898 Act. *Katchen v. Landy,* 382 U.S. at 335–336, 86 S.Ct. at 475–476.

peal the District Court's judgment. *Id.* at 142, 106 S.Ct. at 468. These two examples indicate that by failing to act within a specified time a party may automatically waive either a Constitutional right or a statutory right to appeal.

 This court holds that the Amended Order's "deemed consent" provision is an appropriate means of waiving either a personal Constitutional right or a statutory right.

## B. The Notice Requirements

Beginning now from the premise that debtor's objection was untimely, this court addresses the issue of whether the delay by the bankruptcy clerk in mailing to debtor the notice of Coblentz' appeal excused the objection's untimeliness or extended the time for debtor to object.

### 1. *Serving Notice of Appeal*

It is the clerk of the bankruptcy court, not the appellant, who is required to serve notice of the appeal and its reference to the BAP. Rule 8004 and Amended Order ¶ 3(a). The Amended Order provides that the clerk shall serve such notice within three (3) days after the notice of appeal is filed. Rule 8004 specifies no time period but does state that "[F]ailure to serve notice shall not affect the validity of the appeal." [24] The question not clearly answered by the Bankruptcy Rules or the Amended Order is whether failure of the bankruptcy clerk to give notice tolls the time for objecting to reference of the appeal to the BAP.[25]

### 2. *Failure of the Bankruptcy Clerk to Give Notice of Appeal Until August 20, 1986.*

The notice of appeal was filed August 1, 1986. The designation of record was filed

and served on debtor August 11, 1986. On August 20, 1986 the bankruptcy clerk mailed to debtor notice that the notice of appeal had been filed and that the appeal was being referred to the BAP. Debtor filed a counterdesignation of record on August 22, 1986, the final date for making a timely objection to the BAP's jurisdiction. Debtor filed an objection to reference of the appeal to the BAP on September 10, 1986.

Debtor argues that because the bankruptcy clerk did not provide notice that Coblentz' appeal was being referred to the BAP until August 20, 1986, she was unable to file a timely objection to the reference because the twenty-one (21) day period had ended before she actually received notice of the reference. "Accordingly, [debtor] was effectively precluded from filing a timely objection to the referral of this appeal to the BAP. It is submitted that if [debtor] would have received prompt notice of referral of the appeal to the BAP then she would have timely filed her objection thereto, thereby causing a transference of the appeal to the appropriate United States District Court." (Debtor's Objection To Referral To The Bankruptcy Appellate Panel And Motion To Transfer pp. 2–3.)

There is sufficient evidence in the pleadings to indicate that debtor had actual notice that Coblentz planned to and ultimately did file an appeal. Debtor even responded with a counterdesignation of the record to be considered on appeal. Given the fact that debtor had actual notice of the appeal, the clerk's failure to mail the official notice of the appeal did not in any way prejudice debtor. However, it is arguable that even though debtor knew of the appeal, debtor

---

**24.** Rule 9022 requires notice of a judgment or order to be served on the parties but specifically states that lack of notice does not affect the time for appeal. Because the clerk's failure to give notice does not affect the time for appeal, Rule 9022 implicitly imposes upon the parties the burden of remaining apprised of the court's actions.

**25.** It should be reiterated at this point that Rule 8006 requires appellant, rather than the clerk, to

"serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." This notice is to be given within ten (10) days after filing notice of appeal. Coblentz' compliance with rule 8006 was timely and he properly notified debtor of the designation of the record. Debtor responded by filing a counterdesignation of the record and issues to be considered on appeal.

did not know that appeals from bankruptcy court were automatically referred to the BAP. Even so, the local rules clearly explain the procedural steps for filing or opposing an appeal, including the automatic reference to the BAP and the time limit for objection.

■■■ Unless one can show lack of actual knowledge of the appeal, failure of the clerk to provide the official notice that a Notice of Appeal has been filed will not excuse an untimely objection nor will it extend the time in which to object.

### 3. *Direct Appeal To The Court of Appeals*

Both parties agreed to appeal directly to the Court of Appeals pursuant to 28 U.S.C. § 1293(b). The notice of appeal in the bankruptcy court was vacated and the appeal in the district court was dismissed pursuant to the mandatory language of Rule 8001(d)(1).

#### a) 28 U.S.C. § 1293(b)

The language of 28 U.S.C. § 1293(b) allows for direct appeal from Bankruptcy Court to the Court of Appeals. However, this statutory authorization of direct review by the Courts of Appeals was implicitly repealed by the 1984 Amendments. *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778 (8th Cir.1987); *In re Jones*, 804 F.2d 1133 (10th Cir.1986); *In re Carter*, 759 F.2d 763 (9th Cir.1985); *In re Exclusive Industries Corp.*, 751 F.2d 806 (5th Cir. 1985); *In re General Coffee Corp.*, 758 F.2d 1406 (11th Cir.1985); *In re Amatex Corp.*, 755 F.2d 1034, 1037 n. 2 (3rd Cir. 1985); and *In re Riggsby*, 745 F.2d 1153 (7th Cir.1984). Simply put, Title II of the 1978 Act added to Title 28 of the United States Code, *inter alia*, section 1293 which authorized direct appeals from Bankruptcy Court to the Courts of Appeals. However, Title II was not to become effective until April 1, 1984. During this transition period the constitutionality of the bankruptcy system created by the 1978 Act was questioned by the United States Supreme Court

in *Northern Pipe Line*. Congress extended the transition period several times while it struggled to enact legislation consistent with the *Northern Pipeline* decision. Finally, on July 10, 1984 Congress enacted the 1984 Amendments. These amendments included what is now 28 U.S.C. § 158 which authorizes appeals from Bankruptcy Court to the District Court or to the Bankruptcy Appellate Panel should the judicial council of a circuit create one, but which does not authorize direct appeals to the Courts of Appeals. Thus it should be clear that Congress expressly precluded direct appeal to the Courts of Appeals.

However, through some confusion or inadvertence Congress included contradictory language in the amendments affecting the provisions of the 1978 Act. The Ninth Circuit Court of Appeals explained that:

The first [amendment], section 113 of the 1984 amendments, 98 Stat. 343, states that section 402(b) "is amended by striking out 'shall take effect on June 28, 1984' and inserting in lieu thereof 'shall not be effective'." This would have done the trick, but somebody had another idea. The second amendment, section 121(a) of the 1984 Amendments, 98 Stat. 345, states that sections 402(b) and 402(e) of the 1978 Act are amended "by striking out 'June 28, 1984' each place it appears and inserting in lieu thereof 'the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984'."

*In re Carter*, 759 F.2d at 765.

■■■ The contradiction is obvious. One amendment makes the 1978 Act ineffective while the other makes it effective as of the date the 1984 Amendments are enacted. This court shares the view of the Ninth Circuit Court of Appeals that Congress did not intend to revive the 1978 Act and that the 1978 Act, 28 U.S.C. § 1293(b) included, was rendered ineffective by the 1984 Amendments. *Id.* at 766. Therefore, the Courts of Appeals do not have jurisdiction to entertain direct appeals from Bankruptcy Court.[26]

26. The implicit repeal of 28 U.S.C. § 1293(b) has been discussed by various courts of appeals

b) Rule 8001(d)

■ Rule 8001(d) accommodated 28 U.S.C. § 1293(b) when the appellant perfected an appeal to the District Court or to the BAP and subsequently or concurrently perfected an appeal directly to the Court of Appeals. Rule 8001, Advisory Committee Note. The amendments to the bankruptcy rules effective August 1, 1987 delete Rule 8001(d) to be consistent with the repeal of 28 U.S.C. § 1293(b). It is this court's view that the statute and the rule became ineffective on the same date. Therefore, the mandatory orders dismissing Coblentz' appeals in the district court and the BAP pursuant to Rule 8001(d) were ineffective at the time they were issued.

### 4. Conclusion

Because 28 U.S.C. § 1293(b) and Rule 8001(d) have been repealed, neither the filing of the direct appeal nor the dismissal of Coblentz' pending appeal were effective. Accordingly, Coblentz' appeal remains intact as though the direct appeal had never been filed.

Debtor's objection to the reference to the BAP was untimely. Therefore, debtor waived its right to an Article III adjudication and consented to adjudication by the BAP. The bankruptcy clerk's delay in sending proper notice of the appeal did not prejudice debtor who had actual knowledge of the appeal and does not extend the time for objection. The appeal from the judgment of July 25, 1986 should have remained with, and been disposed of by, the BAP.

However, because disposition of this matter has already been delayed too long, this court elects to reinstate the appeal rather than return the matter to the BAP and send the litigants on yet another journey in search of a tribunal. It appears that once focus deviates from the lodestar of a just, speedy and inexpensive determination of an action and instead becomes fixed upon the object of stratagem and technical tactic,

cases tend to meander in their journey towards final adjudication. From the moving papers it appears that such is the primary circumstance of this case. Innuendoes of deception and allegations of intentional delay color the moving papers. Had this energy been directed toward researching the law, this court's task would have been significantly eased.

IT IS HEREBY ORDERED that appellant Coblentz' Motion to Reinstate the Appeal be Granted.

IT IS HEREBY ORDERED that the Stay of the Release of Monies held as Security for Judgment shall continue in effect pending the outcome of the appeal.

IT IS SO ORDERED.

since 1984 and by the Ninth Circuit Court of Appeals since 1985. Apparently, counsel for neither party became aware of the implicit repeal until after they had unsuccessfully attempted the direct appeal to the Ninth Circuit Court of Appeals. One would hope that this expensive lesson in bankruptcy procedure would be charged to experience rather than to the clients.