In re BOKUM RESOURCES CORPORATION, Debtor.

LONG ISLAND LIGHTING COMPANY, Plaintiff/Counterdefendant,

v.

BOKUM RESOURCES CORPORATION, Defendant/Counterplaintiff.

Bankruptcy Case No. 11–81–00666 GA. Adv. Nos. 82–0235, 82–0202.

United States Bankruptcy Court, D. New Mexico.

Sept. 8, 1986.

Stephen Goldstone, Davis, Polk & Wardwell, New York City, Nancy Anderson, Montgomery & Andrews, Santa Fe, N.M., for Long Island Lighting Co.

G. Stanley Crout, Stephen, Carpenter, Crout & Olmsted, Santa Fe, N.M., for Bokum Resources Corp.

## AMENDED MEMORANDUM OPINION AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

THIS MATTER has had a long history before the Court and is now before this Court on remand from the District Court for the reconsideration of this Court's certificate of December 19, 1983.

The proceeding now before the Court was originally commenced by the filing by Long Island Lighting Company ("LILCO") of an involuntary petition against the Debtor, Bokum Resources Corporation ("Bokum"). In the original petition, which was joined in by other parties, LILCO asserted significant secured and unsecured claims against Bokum. In its response Bokum denied the allegations and asserted counterclaims against LILCO alleging, (1) that Bokum and LILCO were partners, (2) that monies advanced by LILCO should be treated as capital contributions and not debt, and (3) that LILCO had dealt unfairly with Bokum. Bokum's three claims, which were denominated as counts 2, 3, and 4 of Bokum's counterclaim, were heard and determined by this Court, and that opinion is reported as *Long Island Lighting Co. v. Bokum Resources Corp.*, 40 B.R. 274

(Bankr., N.M.1983) The judgment on those claims has given rise to the matter now before the Court.

The issues framed by Bokum's counter-claims and LILCO's claims were all premised on state law theories, and it is clear that but for the bankruptcy petition, the issues would properly have been decided either in a state court or the federal district court. The matter was tried in the bankruptcy court pursuant to stipulation of the parties. That stipulation provided, in pertinent part:

1. The parties consent to entry of judgment or any other final order by the Bankruptcy Court.

2. Notwithstanding the provisions of Local Rule 31(e)(2)(b), as adopted in the District of New Mexico by Order Misc. No. 1426 entered December 22, 1982, any appeal from the judgment or final order entered by the Bankruptcy Court shall be first to the District Court which shall apply the standards for review on appeal applied by Courts of Appeals when reviewing final judgments of District Courts in civil cases under the provisions of 28 U.S.C. § 1334 and §§ 238 and 405(e) of the Bankruptcy Reform Act of 1978 as in effect on the date this case was commenced.

A trial on the issues was held in the summer of 1983 and Judge Gueck rendered his decision on December 16, 1983. At that time two cases had been handed down by the Ninth and Fourth Circuits, respectively, those being *Pacemaker Diagnostic Clinic of America v. Instromedix, Inc.*, 712 F.2d 1305 (9th Cir.1983), and *1616 Reminc Ltd. Partnership v. Atchison & Keller Co.*, 704 F.2d 1313 (4th Cir.1983). The *Pacemaker* decision had invalidated legislation permitting federal magistrates to adjudicate matters with the consent of the parties. The decision cast into doubt the ability of the bankruptcy court to hear the within matter predicated on the consent of the parties. Accordingly, in light of those two cases and notwithstanding the stipulation, Judge Gueck declined to enter a final judgment in this case. Instead, he issued his certificate which stated:

Accordingly, in an effort to preserve inviolate all rights of the parties hereto, since this matter is a related proceeding as defined in Local Rule 31(d)(a), I am certifying, pursuant to Local Rule 31(d)(3)(B), as amended by paragraph (d)(3)(B)(i), these findings, conclusions and proposed judgment to the District Court for disposition as that Court deems appropriate.

The United States District Court has now noted that the Ninth Circuit has modified its opinion in *Pacemaker, supra*, thereby reaffirming the constitutionality of consent jurisdiction. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984), *cert. denied*, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Further, Local Rule 31 has been modified as a result of the Bankruptcy Amendments of 1984. Additionally, 28 U.S.C. § 157 now deals with jurisdictional matters in the Bankruptcy Court. As a result of the changes in the law the District Court remanded this matter to the Bankruptcy Court with the following instructions:

In light of the modifications in the law as discussed herein, it is the opinion of this Court that the matter should be remanded to the Bankruptcy Court for determination of whether this proceeding is a core or non-core proceeding, for further consideration of the stipulation of the parties entered into on April 18, 1983, and made an order of the Court on June 13, 1983, and for entry of any further orders in accordance with 28 U.S.C. § 157(b) or (c) and subject to review in accordance with 28 U.S.C. § 158.

In considering this matter it is necessary, at least in part, to place in focus the time frames within which various pertinent action were taken. This bankruptcy case was filed in 1981. In 1982 the United States Supreme Court handed down its decision in *Northern Pipeline v. Marathon Pipeline*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In the hiatus that ensued following

*Marathon,* and prior to the adoption of the 1984 Amendments to the Bankruptcy Code, this Court operated pursuant to the Amended Local Rule 31 which was promulgated by the District Court on December 22, 1982. That rule which, of course, was the precursor to 28 U.S.C. § 157, provided that in "related" proceedings the Bankruptcy Judge could not enter a judgment or dispositive order, but could only submit findings, conclusions and proposed judgments to the District Court "unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge." Local Rule 31d.(3)(b). It defined "related proceedings" as follows:

> (3)(a) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turnover property of the estate; proceedings to set aside preference and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting · from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law. Local Rule 31d.(3)(a).

As to appeals and review of judgments or findings by Bankruptcy judges, whether in related proceedings or otherwise, the Local Rule provided, as to the scope of review:

> In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment. Local Rule 31e.(2)(b).

The stipulation in the instant case was entered into in April 1983 and was approved by the Court in June 1983. As stated above, Judge Gueck's order in this adversary proceeding was entered in December 1983 and the certificate issued on December 19, 1983. The 1984 Amendments to the Bankruptcy Code then became effective on July 10, 1984.

In response to the order of remand by the United States District Court the parties to this proceedings have filed their written statements of position. Bokum has argued that this proceeding is a non-core proceeding since the issues involved are state law issues, only peripherally related to the bankruptcy case. Bokum further argues that under *Marathon, supra,* it is not constitutionally permissible, in a non-core proceeding, for the District Court's power of review to be limited to simple appellate review. Thus, it is argued, that even though the rules have changed, and despite the stipulation, the appeal in this case must provide a scope of review similar to that provided under the Local Rule in effect at the time of the initiation of the appeal. Finally, Bokum argues that the stipulation must be construed in light of the Local Rule at the time that the stipulation was entered into.

As could be expected, LILCO takes a contrary view. LILCO points out that the stipulation was voluntarily entered into and that the modified *Pacemaker* opinion, *supra,* 725 F.2d 537, would condone the implementation of the stipulation. While LILCO contends that the present proceeding is a core proceeding, it emphasizes that the core/non-core issue need not be

reached to determine the effect of the stipulation in light of the provisions of 28 U.S.C. § 157(c)(2) which specifically provides for consent jurisdiction in a non-core proceeding. Since the stipulation was freely entered into LILCO argues that it should have the benefit of its bargain, that this Court should enter a final judgment, and that review of that judgment should be under the "clearly erroneous" rule.

The threshold question which this Court must now determine is whether the instant proceeding is a "core" or a "non-core" proceeding within the meaning of 28 U.S.C. § 157. That determination requires an analysis of the legislative history of the Bankruptcy Code as it pertains to jurisdiction and the effect of the Supreme Court's various decisions on the jurisdictional base.

It is clear that prior to the Supreme Court's decision in *Marathon, supra,* the jurisdiction vested in the Bankruptcy Court by the 1979 Code would have enabled this Court to have tried the issues in this case and entered a final judgment thereon. *Marathon* arose out of a lawsuit commenced by the debtor in the Bankruptcy Court to recover from the defendant in that case. in a breach of contract action. The defendant was not a creditor of the estate, had not filed a proof of claim and apparently had not otherwise entered an appearance in the Chapter 11 case. The Supreme Court held that the purported jurisdiction of the Bankruptcy Court under these circumstances was unconstitutional since the Bankruptcy Court was not a court formed and authorized to act under the provisions of Article III of the United States Constitution.

*Marathon* was a plurality decision by the Court with multiple opinions. Under the circumstances it appears appropriate and proper that the case be given a narrow reading limited to its factual circumstances, and, indeed, that appears to be the mandate of the Tenth Circuit Court of Appeals. *John E. Burns Drilling Co. v. Central Bank of Denver,* 739 F.2d 1489, 1493 (10th Cir.1984); *Matter of Colorado Energy Supply, Inc.,* 728 F.2d 1283 (10th Cir. 1984).

The *Marathon* decision ultimately led to the 1984 Amendments to the Bankruptcy Code and to the adoption of 28 U.S.C. § 157. Under that section proceedings in the Bankruptcy Court are segregated into "core" and "non-core" proceedings. 28 U.S.C. § 157(b)(2) defines core proceedings to include, among other things, (a) matters concerning administration of the estate; (b) allowance or disallowance of claims against the estate, and (c) counterclaims by the estate against persons filing claims against the estate. Non-core proceedings are those which are "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). The distinction is of significance only in the fact that the Bankruptcy Court is authorized to hear core proceedings and to issue final judgments therein, while in non-core proceedings which are otherwise related to a case under Title 11, the bankruptcy judge may hear such proceedings but, absent consent of the parties, cannot enter a final judgment but must submit proposed findings of fact and conclusions of law to the District Court. 28 U.S.C. § 157(c). If the parties consent, non-core matters which are otherwise related to a pending bankruptcy case then, in effect, become core proceedings.

Based solely on a reading of the statutory language the within proceeding would have to be considered to be a core proceeding. The proceeding was commenced by the filing of the involuntary petition by LILCO and its asserting therein of a claim. The determination of an involuntary petition is clearly a matter concerning the administration of the estate which arises out of the Bankruptcy Code. Similarly the allowance or disallowance of claims is a matter that should, without question, be adjudicated by the Bankruptcy Court. Finally, Bokum asserted its counterclaims raising the issues currently in question. Since the counterclaims filed by Bokum are against persons filing claims against the estate, they fall squarely within the language of 28 U.S.C. § 157(b)(2)(C). To be sure, the claims and the counterclaims all are found-

ed on traditional state law type matters and, absent the filing of the bankruptcy case against Bokum, would ultimately have been resolved in a civil suit in either the state court or an appropriate federal district court. Nevertheless, 28 U.S.C. § 157 does not discriminate as to the types of counterclaims and again, based on the plain language of the statute, the matters at issue and resolved in this proceeding would be considered to be core proceedings. The question is whether construing the statue according to its plain meaning runs afoul of the Supreme Court's decision in *Marathon.*

Prior to *Marathon* the Supreme Court had previously looked at the propriety of a non-Article III court in bankruptcy matters exercising jurisdiction to determine a counterclaim filed in response to a creditor's proof of claim. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). The *Katchen* case arose under the predecessor Bankruptcy Act. The counterclaim which was asserted was to recover a preference made voidable by the provisions of the Act. Thus the counterclaim arose out of the Bankruptcy Act itself and, in the language of *Marathon, supra,* was in the nature of a public right.

The decision in *Katchen* was premised on the theory of jurisdiction by consent and the Court concluded that one who files a claim in a bankruptcy proceeding is subject to the summary jurisdiction of the Bankruptcy Court to compel surrender of a preference received. The plurality decision in *Marathon, supra,* cast doubt on the efficacy of *Katchen* and brought into question the propriety of the bankruptcy court exercising jurisdiction by virtue of the consent of the parties whether explicit (as with the stipulation in this case) or implicit (as by the filing of a claim and a resultant counterclaim). The first *Pacemaker* decision, *supra,* 712 F.2d 1305, confirmed the apparent belief of some that jurisdiction over matters constitutionally reserved to Article III judges cannot be heard by non-Article III judges even if the parties consent.

Echos of that decision were heard elsewhere. *1616 Reminc Ltd. Partnership v. Atchison & Keller Co., supra; In re Nanodata Computer Corp.,* 52 B.R. 334 (Bankr. W.D.N.Y.1985) (wherein the Bankruptcy Court specifically objects to the concept of "jurisdiction by ambush"). It was the first *Pacemaker* decision and the decision in *1616 Reminc* which caused Judge Gueck in this proceeding to have doubts concerning his authority to enter a final judgment, even with the consent of the parties, thereby leading to his certificate of December 19, 1983, certifying the findings, conclusions and proposed judgment to the district court.

Since the entry of Judge Gueck's certificate additional significant events have occurred. The Ninth Circuit has recanted in its first opinion in *Pacemaker,* holding now that jurisdiction by consent is constitutionally permissible. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984). More importantly, the Supreme Court has rendered two further decisions which narrow the scope and impact of *Marathon* and confirm the concept of jurisdiction by consent via *Katchen v. Landy, supra.*

The first decision of note was handed down in the case of *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. ——, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). The Court there was dealing with an act regulating the licensing for sale of insecticides and related chemical products (7 U.S.C. § 136 *et seq.*). Under the licensing concepts provided under that act a company filing an application to license a product is required to file supporting documentation concerning the product. That documentation comprises information which would, absent the licensing and disclosure requirement, constitute trade secrets of the applicant. Once filed the documentation is open to the public, and later registrants are permitted to utilize the information contained in the initial registration as a base for later registration of similar or other

products. The company first filing is entitled to compensation if subsequent applicants use the original filing as a base for their later application, and the extent of that compensation is determined under the act by an arbitrator. The act specifies that the arbitrator's decision can be appealed to the Federal District Court but can only be set aside upon a finding by the court of fraud, misrepresentation or other misconduct on the part of the parties or the arbitrator. The parties argued that Article III of the United States Constitution bars Congress from requiring arbitration of disputes among registrants without also affording substantial review by tenured judges of the arbitrator's decision. The Supreme Court denied the argument finding jurisdiction proper, primarily because it determined that the right to seek compensation by way of arbitration constituted a "public right" created by the statute. The Court further found that under the circumstances the review provided under the statute, although narrow, preserved the appropriate exercise of the judicial function by protecting against arbitrators "who abuse or exceed their powers or willfully construe their mandate under the governing law." *Ibid.*, —— U.S. at ——, 105 S.Ct. at 3339, 87 L.Ed.2d at 427.

More recent, and more in point, is the Court's decision in *Commodity Futures Trading Commission v. Schor,* —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (hereafter *"Schor"*). In *Schor* the Court dealt with the provisions of the Commodities Exchange Act, 7 U.S.C. § 1 *et seq.* Under that Act a customer of a commodity broker can seek redress for the broker's violation of the Act by applying to the Commodity Futures Trading Commission ("CFTC") for an order directing the offender to pay reparations. The CFTC is further given jurisdiction to adjudicate counterclaims which arise out of the transaction or occurrence which give rise to the reparations' complaint. Alternately, the customer, on his complaint, or the broker, on his counterclaim, can file suit in the Feder-

al District Court. In *Schor* the customer originally filed for reparation before the CFTC. The broker commenced a suit in the federal district court against Mr. Schor to recover the balance outstanding in his commodity trading account. Schor counterclaimed in the federal court action. The broker then voluntarily dismissed the federal court action and presented its debit balance claim by way of a counterclaim in the CFTC reparations proceeding. Ultimately the CFTC found in favor of the broker and Mr. Schor appealed.

In lodging his appeal Mr. Schor challenged, among other things, the CFTC's statutory authority to adjudicate the counterclaim. The Court of Appeals, relying on *Marathon, supra,* found that the CFTC "lacks authority (subject matter competence) to adjudicate" common law counterclaims. *Schor v. Commodity Futures Trading Commission,* 740 F.2d 1262, 1264 (D.C. Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). The Supreme Court reversed, finding that the jurisdictional scheme under the Commodities Exchange Act was permissible. In doing so it discussed the propriety of resolving the entire dispute in the administrative forum as a means of promoting the administrative remedy and of judicial economy. The Court concluded that the constitutional right to have matters heard by an Article III judge serves to protect "primarily personal, rather than structural interests" and that, as a personal right, the guaranty of Article III of the Constitution of an impartial and independent federal adjudication is subject to waiver. In doing so the Court expressly affirmed *Katchen v. Landy, supra,* characterizing *Katchen* as follows:

> Similarly, in *Katchen v. Landy,* 382 U.S. 323 [86 S.Ct. 467, 15 L.Ed.2d 391] (1966), this Court upheld a Bankruptcy referee's power to hear and decide state law counterclaims against a creditor who filed a claim in bankruptcy when those counter-

claims arose out of the same transaction. *Schor, supra,* —— U.S. at ——, 106 S.Ct. at 3258.

Thus jurisdiction by consent can be inferred from the filing of a claim (the "jurisdiction by ambush" which bothered the court in the *Nanodata Computer Corp.* case, *supra*) or, can be conferred by an explicit stipulation as in the present proceeding. In this regard the Supreme Court's opinion in *Schor* concerning the vesting of jurisdiction by consent adopts the arguments of Justice Burger, in his dissenting opinion, and Justice White, in his dissenting opinion, in *Marathon, supra.*

■ The present proceeding is very like *Schor.* LILCO voluntarily filed its claim in the bankruptcy court in order to commence the involuntary bankruptcy case. Bokum has counterclaimed asserting purely *Marathon* type state law claims. Were it not for LILCO's initiation of the proceeding there would clearly be no jurisdiction in this Court to maintain a suit by Bokum against LILCO on the claims now asserted by way of counterclaims. Jurisdiction over those types of purely state law claims is clearly barred by *Marathon, supra,* unless the parties consent.

Another similarity between the present proceeding and *Schor* is the procedural posture. In *Schor* it was Schor, the party who invoked the jurisdiction of the CFTC, who thereafter complained of CFTC's jurisdiction to hear the counterclaim filed by the broker. Here Bokum could have objected to LILCO's claim in the bankruptcy case and sued LILCO in the state court or the federal district court. Bokum chose instead to counterclaim and expressly stipulated to jurisdiction. Bokum now objects and seeks to preserve an opportunity to fully or partially retry the matter in the district court. In *Schor, supra,* the Supreme Court discussed and affirmed the propriety of the non-Article III body dealing both with the principal claim and the counterclaim in order to promote judicial efficiency and the administrative remedy.

Similarly here, permitting the bankruptcy court to hear and render a final judgment on the claims between the parties which arose out of the same transaction and occurrence which have been voluntarily filed in this Court, and which are necessary to resolve in order to finally administer this bankruptcy case, will greatly promote judicial economy and carry out the administrative concept of the Bankruptcy Code.

Without inquiring into the effect of the particular appellate remedy, one can conclude from *Schor* that the Supreme Court has not only reaffirmed, but has expanded, the jurisdiction by consent concept of *Katchen v. Landy.* In *Katchen* the counterclaim was premised on a statutorily-created right. In *Schor,* as noted above, the Court observed that *Katchen* upheld the bankruptcy court's power to hear and decide state law counterclaims against creditors who filed a claim "when those counterclaims arose out of the same transaction." Thus a fair reading of *Schor* leads to the conclusion that the controversy in this case, involving counterclaims which arose out of the same transaction giving rise to the claim filed by LILCO, is a core proceeding within the meaning of 28 U.S.C. § 157 as to which this Court has the jurisdiction to both hear the proceeding and enter a final judgment.

■ Inquiry cannot stop just with the status of the claim in the bankruptcy court. Before concluding that the exercise by this Court of jurisdiction over the present proceeding is constitutionally permissible, the plurality decision in *Marathon* would indicate that we must inquire as well into the scope of the appellate remedy.

At the time that *Katchen v. Landy* was decided, review of decisions of bankruptcy judges was pursuant to Section 39(c) of the Bankruptcy Act and General Order 47 promulgated thereunder. That General Order specified that on appeal the judge should accept the referee's findings of fact unless clearly erroneous. *Potucek v. Cor-*

*deleria Lourdes,* 310 F.2d 527 (10th Cir. 1962). General Order 47 did reserve to the district court, however, the right to receive further evidence. In this respect, Local Rule 31 is similar to the appellate process under General Order 47. Subsequently, in 1973 the new Bankruptcy Rules were promulgated. Bankruptcy Rule 810, then adopted, specified that on appeal of a decision of the bankruptcy court, the district court shall:

> ... accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.

This standard for review has been preserved in Bankruptcy Rule 8013.

The plurality opinion in *Marathon* casts some doubt on the sufficiency of this appellate standard in non-core matters. The plurality decision accepted the use of "adjuncts" to hear facts so long as there would be adequate control by courts duly constituted under Article III of the Constitution. This has been construed to mean that in non-core matters there must be something tantamount to a *de novo* review by the district court, *1616 Reminc, supra,* and the issue, while acknowledged to exist, has not been resolved in this circuit. See, *In re Branding Iron Motel, Inc.,* 798 F.2d 396 (10th Cir., 1986). Thus Bokum might still argue here that 28 U.S.C. § 157, giving the bankruptcy court core jurisdiction over counterclaims, can only apply to pure *Katchen* type counterclaims which arise out of the Code, thereby preserving *de novo* review for alleged non-core state law type counterclaims which are only "related to" the claims filed in the bankruptcy case. Such an argument does not withstand critical analysis.

As previously noted, under the predecessor General Order 47, promulgated under the old Bankruptcy Act, the district court had the opportunity to hear additional evidence on appeal of a ruling from the bankruptcy court. This standard of appeal was abrogated by Bankruptcy Rule 810 which continued in effect the "clearly erroneous" standard but abrogated the provisions of General Order 47 which allowed the district judge to take further testimony on appeal. The change in the appellate standard and the deletion of a party's right to present additional evidence on appeal were considered to be only procedural in nature since the bankruptcy rules could not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2075. Similarly the Tenth Circuit Court of Appeals, in confirming that the "clearly erroneous" standard is properly applicable in core proceedings, has also confirmed that the adoption of the clearly erroneous standard does not affect the substantive rights of the parties but merely implements the procedural framework for appeals. *In re Reid,* 757 F.2d 230 (10th Cir.1985).

In the *Thomas* case, *supra,* the Supreme Court affirmed as constitutionally permissible an appellate scheme wherein the court's review of the administrative orders was limited to an inquiry of fraud or misrepresentation on the part of the parties or the officer hearing the arbitration. While it might be argued that the statute dealt with in the *Thomas* case had to do with a "public," as opposed to a "private," right within the meaning of *Marathon* (and the Supreme Court in fact so treated it), the fact is that the statute there replaced the traditional common law remedy for the protection of trade secrets with an administrative remedy as part of a scheme for governmental control over the registration and sale of pesticides and insecticides. *Schor, supra,* dealt with a statute which preserved the more traditional "weight of the evidence" standard for appellate review. In neither case did the Supreme Court find fault with a statutory scheme which failed to preserve to an Article III court the power to conduct a *de novo* review of a non-Article III agency's findings.

Even were this Court to accept the argument that a *de novo* review is required as

to counterclaims which do not arise out of the Code but are otherwise related, it is not necessary to conclude that *de novo* review is mandatory in this case. Here the parties gave their consent to the trial of this matter by the bankruptcy court with review to be by direct appeal to the district court on the record. The *Schor* decision, *supra,* now makes it clear that the constitutional protection of an independent judiciary is a personal right that can be waived. This Court sees no reason why that waiver does not extend as well to the standard for review.

Bokum has argued that when it entered into the stipulation, Local Rule 31e.(2)(b) was in effect under which the district court, in conducting review, could hold a hearing and receive such evidence as the court considered appropriate. Bokum asserts that it should not be required to comply with a new appellate standard that was not in effect when the stipulation was entered into. To this argument there are at least two responses. First, the stipulation was explicit that review of this Court's decision was to be in accordance with the standards applied

> ... by Courts of Appeal when reviewing final judgments of District Courts in civil cases.

Thus, Bokum voluntarily waived the more pervasive standard applicable under Local Rule 31. Second, by its terms Local Rule 31 was only to remain in effect

> ... until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.* [458] U.S. [50], 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs. Misc. Order 1426, promulgating Amended Local Rule 31.

Since the rule had a finite life, and Bokum was aware that different procedural stan-

dards for review might well be in effect at the time of appeal, Bokum's plea that its appeal should be treated other than in accordance with its stipulation is of no merit.

Having now reconsidered this matter in light of more recent authorities, this Court now concludes:

1. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157 and this Court has the jurisdiction to enter a final judgment and order herein.

2. Even if this proceeding is considered to be non-core in nature, the parties have consented to its being treated as a core matter and such consent is constitutionally permissible.

3. In either event this standard for review should be that specified by Bankruptcy Rule 8013.

ACCORDINGLY, IT IS HEREBY ORDERED that the certificate of Judge Gueck dated December 19, 1983, should be and hereby is withdrawn and, pursuant to the findings and conclusions entered by Judge Gueck on December 16, 1983, judgment is hereby entered on the counterclaims dealt with in favor of LILCO.