In re KAISER STEEL
CORPORATION, Debtor.

KAISER STEEL CORPORATION,
et al., Plaintiffs,

v.

Joseph A. FRATES, et al., Defendants.

KAISER STEEL CORPORATION,
et al., Plaintiffs,

v.

Monty H. RIAL, et al., Defendants.

Bankruptcy No. 87 B 1552 E.
Adv. Nos. 87 E 135, 87 E 437.

United States Bankruptcy Court,
D. Colorado.

Jan. 16, 1989.

See also, Bkrtcy., 89 B.R. 150.

784

James McCarthy, Edward M. Glennon, Linquist and Vennum, Minneapolis, Minn., H. Thomas Coghill, Coghill and Goodspeed, Denver, Colo., for Kaiser Steel Corp., et al.

Morton G. Rosen, Gregory J. Khougaz, Haight, Dickson, Brown & Bonesteel, Santa Monica, Cal., Patrick McBride, Hall & Evans, Denver, Colo., for Charles H. Black.

William D. Treeby, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., William H. Haring, Bostrom, Haring & Hitt, Denver, Colo., for Lloyd G. Hansen.

Robert E. Darby, Reavis & McGrath, Los Angeles, Cal., Ronald G. Rossi, Rossi & Stone, Denver, Colo., for William R. Gould and Howard P. Allen.

Davis, Polk & Wardwell, Frank S. Mosley, New York City, Jerome G. Snider, Washington, D.C., Douglas M. Tisdale, Brownstein, Hyatt, Farber & Madden, Denver, Colo., for Donaldson, Lufkin & Jenrette.

Joseph Gross, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Darrell Waas, Otten, Johnson, Robinson Ness & Ragonetti, Denver, Colo., for Richard N. Gary and Stephen A. Girard.

Robert J. Morrow, White & Case, New York City, Theresa Collier, Holland & Hart, Denver, Colo., for Clifford V. Brokaw, III.

Todd E. Gordiner, Paul, Hastings, Janofsy & Walker, Los Angeles, Cal., William G. Imig, Ireland, Stapleton, Pryor & Pascoe, Denver, Colo., for Dean Witter.

Arnold Jacobs, Glenn Siegel, Shea & Gould, New York City, Hardin Holmes, Holmes & Starr, Denver, Colo., for Touche Ross & Co.

Alan Bugg, Colorado Springs, Colo., for Calder & Co., et al. and Perma Pacific Properties, et al.

Paul F. Hultin, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for Joseph A. Frates, Charles S. Holmes, Robert E. Merrick and Stan P. Doyle and Perma–Frates Joint Venture.

Richard P. Slivka, Vinton, Slivka & Panasci, Denver, Colo., for Charles S. McNeil & Monty H. Rial and Perma/Frates Joint Venture.

I. Thomas Bieging, Morrato, Beiging, Burrus & Colantuno, Englewood, Colo., for Miles B. Yeagley.

## OPINION AND ORDER ON PLAINTIFF'S MOTION TO STRIKE JURY DEMANDS

CHARLES E. MATHESON, Chief Judge.

### I.

### INTRODUCTION

The Plaintiff has filed these two adversary proceedings seeking to recover property alleged to have been transferred in fraud of creditors and to also recover damages for alleged breaches of duty, conspiracy and on other common law claims. The two proceedings pertain to a complex, related series of transactions which have given rise to a multiplicity of adversary proceedings in this Court.

The complaints filed herein are factually and legally complex. An analysis of the complaints is made more difficult due to the fact that the claims for relief do not have common defendants throughout and pertain to different, albeit related, transactions.[1] In summary, in Case No. 87 E 135 ("135"), the first eight claims for relief are predicated on state law theories such as breach of fiduciary duty, negligence, impairment of capital, and breach of contract. These claims for relief are non-core matters within the meaning of 28 U.S.C.

---

1. The supplementary tables appended to this opinion identify the defendants against whom the various claims are stated.

§ 157(c). The remaining four claims for relief are stated under 11 U.S.C. §§ 548, 544, 550, 541 and 542. As such, they are core proceedings within the meaning of 28 U.S.C. § 157(b). *In re Harbour*, 840 F.2d 1165 (4th Cir.1988); *In re Mankin*, 823 F.2d 1296 (9th Cir.1987); *In re Meyertech Corp.*, 831 F.2d 410 (3rd Cir.1987).

In Case No. 87 E 437 ("437"), the fourth through ninth and the eleventh and twelfth claims for relief are predicated on state law theories such as breach of fiduciary duty, unjust enrichment, failure of consideration, conspiracy and aiding and abetting. As such, these claims for relief are non-core matters within the meaning of 28 U.S.C. § 157(c). The remaining four claims for relief are stated under 11 U.S.C. §§ 541, 542, 544, 547, 548 and 550, and are core-proceedings within the meaning of 28 U.S.C. § 157(b). *In re Harbour, supra; In re Mankin, supra; In re Visidata Corp.*, 84 B.R. 673 (Bankr.N.D.Cal.1988).

Various defendants have made demands to have these cases tried to a jury. The Plaintiff has filed a motion to strike the jury demands or, in the alternative, to sever for trial the claims to which a jury demand should be allowed. This opinion and order is rendered on that pending motion.

## II.

## THE LAW

■ Under the jurisdictional scheme pertaining to bankruptcy courts, this Court has jurisdiction and authority to hear, decide and render final judgment in "core proceedings". 28 U.S.C. § 157(b)(1). The Court recognizes that there is a split among the courts on the issue of whether a party is entitled to a jury trial in core proceedings where the matter at issue is basically predicated on state law, or where the plaintiff seeks to recover damages as opposed to some form of equitable relief such as a recovery of specific property. This Court will not prolong this opinion by restating here the various arguments that have been asserted on one side or the other on this issue. It is sufficient for present purposes that this Court is persuaded that the bankruptcy court is a court of equity, and that Congress intended core matters concerning the debtor's estate and the adjustment of the debtor/creditor relationships to be determined in summary proceedings. Thus, this Court concurs in those decisions which have held that there is no right to a jury trial in core matters. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966); *In re Harbour*, 840 F.2d 1165 (4th Cir.1988); *In re Chase & Sanborn Corp.*, 835 F.2d 1341 (11th Cir.1988); *Inter–State National Bank of Kansas City v. Luther*, 221 F.2d 382 (10th Cir.1955); *In re Kroh Bros. Development Co.*, 91 B.R. 889 (Bankr.W.D. Mo.1988); *In re Visidata Corp.*, 84 B.R. 673 (Bankr.N.D.Calif.1988); *In re Honeycomb*, 72 B.R. 371 (Bankr.S.D.N.Y.1987); *In re I.A. Durbin, Inc.*, 62 B.R. 139 (S.D. Fla.1986); *Bedford Computer Corp. v. Ginn, Pub., Inc.*, 63 B.R. 79 (D.N.H.1986); *Hauytin v. Grynberg*, 52 B.R. 657 (Bankr. D.Colo.1985).

■ With respect to non-core matters, this Court has jurisdiction to hear such matters but cannot enter a final judgment thereon unless the parties consent. 28 U.S.C. § 157(c)(1). If the parties do not consent, this Court must enter findings and recommendations which are certified to the district court. That court then enters judgment after a trial *de novo* as specified under 28 U.S.C. § 157(c)(1). Thus, in this manner, the right of a party to have non-core type matters decided by an Article III judge is preserved. *Northern Pipeline Co. v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter *"Marathon"*). Because of the requirement of a *de novo* trial in the district court, courts have almost uniformly held that it would serve no purpose to have a jury trial in the bankruptcy court in a non-core matter. Consequently, where parties have made a timely and proper jury demand in non-core proceedings, and have not otherwise consented to final adjudication by the bankruptcy court, the proper course of action is for the bankruptcy court to certify the proceeding to the district court for trial.

■ It is, in the first instance, the responsibility and province of the bankruptcy court to determine whether a matter is core or non-core in character. 28 U.S.C. § 157(b)(3). That first level inquiry has been made as above stated. These adversary proceedings have both core and non-core aspects. Since the Court has determined that there is no right to a jury in core proceedings, the focus must be on the question of whether and under what circumstances would a party not have a right to a jury trial in non-core matters.

■ It first must be recognized that a right to a jury trial can be waived if it is not timely asserted. At the time these adversary proceedings were filed, Bankruptcy Rule 9015 was still in effect. That Rule mirrored Rule 38 of the Federal Rules of Civil Procedure. It provided, in pertinent part:

(b) Demand.

(1) Time; Form. Any party may demand a trial by jury of any issue triable by a jury by serving on the other parties a demand therefor in writing not later than 10 days after service of the last pleading directed to such issue. The demand may be indorsed on a pleading of the party.

. . . .

(c) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5005 constitutes a waiver of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties. B.R. 9015.

■ The Rule, by its terms, focuses on the "last pleading" directed to an "issue." B.R. 9015. Thus, in a multi-party case, where there are separate claims for relief stated against different parties on different issues, a jury demand by one party does not necessarily preserve the right to a jury trial to another party on a different claim for relief involving different issues. *Douglas v. Burroughs*, 598 F.Supp. 515 (N.D. Ohio 1984); *Spiro v. Pennsylvania R. Co.*, 3 F.R.D. 351 (S.D.N.Y.1942). Under these circumstances, a defendant who has not made a timely demand for a jury trial on the issues pertaining to him may be denied a jury trial even though another defendant has made a timely demand. Also, the fact that one defendant's answer may be delayed because of pending motions or granted extensions does not extend the time for filing a jury demand by other defendants on other issues. *Spiro v. Pennsylvania R. Co., supra.*

A further issue must also be examined. It is clear that not only may a party waive a right to a jury trial, a party may also consent to having a non-core type matter heard and finally adjudicated by the bankruptcy court as a core matter. 28 U.S.C. § 157(c)(2). The concept of summary jurisdiction by consent in the bankruptcy court was firmly established by the Supreme Court in the case of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), a case which originated out of the Tenth Circuit. In *Katchen* a creditor filed a proof of claim in the bankruptcy court and the trustee then filed a counterclaim seeking to require the creditor to disgorge a preferential payment made to the creditor pre-petition. The creditor objected to having the preference matter tried in the bankruptcy court, asserting a right to a plenary trial in the district court. The Supreme Court, in a landmark decision, held that the creditor had consented to the summary determination of the preference issue in the bankruptcy court.

■ In the *Marathon* case, *supra*, the Supreme Court appeared to have perhaps withdrawn from the holding in *Katchen*. As a result of the sweeping pronouncements in *Marathon* some courts, including this bankruptcy court, held that the jurisdictional provisions of 28 U.S.C. § 157(b)(2)(C), providing for core jurisdiction of counterclaims by the estate to claims filed against the estate, would be unconstitutional if applied to *Marathon* type counterclaims. *See, e.g., In re Illinois–California Express, Inc.*, 50 B.R. 232 (Bankr.D.Colo.1985). However, in two more recent opinions, the Supreme Court firmly re-established *Katchen* and unequivocally confirmed that, under appropriate circumstances, a party can consent to the

determination of private rights by a non-Article III court, and that such consent need not be express, but can be inferred by proceeding in the lesser forum without objection. *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed. 2d 409 (1985).

■ The ability of Congress to authorize lesser tribunals to adjudicate, with the consent of the parties, state law matters, such as those presented in *Marathon,* is not constitutionally unlimited. There remain concerns about the constitutional concept of separation of powers. As the Supreme Court stated in *Schor, supra:*

> It is clear that Congress has not attempted to "withdraw from judicial cognizance" the determination of Conti's right to the sum represented by the debit balance in Schor's account. Congress gave the CFTC the authority to adjudicate such matters, but the decision to invoke this forum is left entirely to the parties and the power of the federal judiciary to take jurisdiction of these matters is unaffected. In such circumstances, separation of powers concerns are diminished, for it seems self-evident that just as Congress may encourage parties to settle a dispute out of court or resort to arbitration without impermissible incursions on the separation of powers, Congress may make available a quasi-judicial mechanism through which willing parties may, at their option, elect to resolve their differences. This is not to say, of course, that if Congress created a phalanx of non-Article III tribunals equipped to handle the entire business of the Article III courts without any Article III supervision or control and without evidence of valid and specific legislative necessities, the fact that the parties had the election to proceed in their forum of choice would necessarily save the scheme from constitutional attack. But this case obviously bears no resemblance to such scenario, given the degree of judicial control saved to the federal courts, as well as the congressional purpose behind the jurisdictional delegation, the demonstrated need for the delegation, and the limited nature of the delegation. (citations omitted). *Commodity Futures Trading Com'n v. Schor,* 106 S.Ct. at 3260.

In the bankruptcy context the question of the vesting of jurisdiction by consent has been examined since the Supreme Court decisions in *Schor* and *Thomas, supra,* and has been found to be constitutionally permissible. *In re Jennings,* 83 B.R. 752 (D.Nev.1988). The *Jennings* court found that under the 1984 Amendments, the concerns expressed in *Marathon* are militated against by reason of the fact that the bankruptcy judges are appointed by the judiciary and receive their cases by referral from the district court, thereby preserving the role of Article III courts while still allowing "efficient and effective disposition of a sophisticated and voluminous case load." *Ibid.* at 761. The undersigned judge, sitting by designation in the District of New Mexico, also recognized the effect of *Schor* and *Thomas* and affirmed the concept of jurisdiction by consent in the bankruptcy court in the case of *In re Bokum Resources Corp.,* 64 B.R. 924 (Bankr. D.N.M.1986). *See also, In re Honeycomb,* 72 B.R. 371 (Bankr.S.D.N.Y.1987).

■ What these cases establish is that there is no inherent constitutional limitation on the ability of a bankruptcy court to adjudicate private claims so long as the parties consent to such adjudication. The holdings of *Schor* and *Thomas* in the bankruptcy setting had, in fact, been anticipated by Congress in the enactment of 28 U.S.C. § 157(c)(2). The question then becomes what acts of a party, short of express written consent, can be deemed to constitute consent to final adjudication by a non-Article III court in a contested matter?

In *Katchen, supra,* the creditor filed a proof of claim against the debtor in the first instance. When the trustee counterclaimed to recover a preference, jurisdiction to decide the trustee's preference claim in a summary proceeding was deemed to have vested. Similarly, in *Schor, supra,* invoking the jurisdiction of the C.F.T.C. by

initiating a proceeding there in the first instance exposed the customer to a common law counterclaim for the balance due on the customer's account. Consent to the summary jurisdiction of the bankruptcy court has also been found where a party contracts with the debtor-in-possession post-petition thereby transforming essentially state law contract actions into core proceedings. *In re Arnold Print Works,* 815 F.2d 165 (1st Cir.1987); *Edgcomb Metals Co. v. Eastmet Corp.,* 89 B.R. 546 (D.Md.1988).

The defendants have argued that the doctrine espoused in *Katchen, supra,* ought to be limited to the situation where the counterclaim filed in response to the creditor's proof of claim arises out of the same transaction or occurrence (a "compulsory" counterclaim in the vernacular of the Federal Rules). However, even prior to *Katchen,* the Tenth Circuit had not so limited the doctrine. In the forerunner of *Katchen,* the Tenth Circuit held that the creditor, by filing a proof of claim, had consented to the bankruptcy court's summary jurisdiction. In speaking of the difference between compulsory and non-compulsory counterclaims, the court stated:

> But even that distinction is of no consequence here for concededly the counterclaim is within the conferrable jurisdiction of the parties. And, being of the view that the bank impliedly consented to the jurisdiction of the court, the counterclaim was maintainable ... whether compulsory or permissible. *Inter-State National Bank of Kansas City v. Luther, supra,* 221 F.2d at 390.

The defendants here have also argued that the *Katchen* doctrine does not apply where the creditor/defendant is brought into the bankruptcy court involuntarily in the first instance and then asserts a defensive counterclaim or files a proof of claim. That view has, in fact, been followed by one circuit court, *In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986), but there is significant authority to the contrary.

The general view is set forth in dictum in *Interconnect Telephone Services Inc. v. Farren,* where the court there stated:

> Where a creditor of the estate files a proof of claim and the estate counterclaims against him, or where the estate brings an action against a creditor and the creditor counterclaims asserting a set-off, it is entirely appropriate for the action to be classified as a core proceeding. *Interconnect Telephone Services Inc. v. Farren,* 59 B.R. 397, 400-01 (S.D. N.Y.1986).

This view is quoted with approval in the case of *In re Honeycomb, supra,* and in the case of *In re Kroh Brothers Development Co.,* 91 B.R. 889 (Bankr.W.D.Mo. 1988).

In *In re Baldwin-United Corp.,* the court found that by filing a counterclaim and seeking affirmative relief, the defendant had consented to the jurisdiction of the bankruptcy court to finally adjudicate the claims asserted. The court there stated:

> Thus consent under section 157(c)(2) may be express; it may be implied from a timely failure to object to the Bankruptcy Court's jurisdiction; or it may be implied from any act which indicates a willingness to have the Bankruptcy Court determine a claim or interest.... By filing a proof of claim, a party indicates a willingness to have the Bankruptcy Court determine the validity and amount of that claim. The same rule certainly applies where a defendant in an action filed by the debtor-in-possession asserts a counterclaim. *In re Baldwin-United Corp.* 48 B.R. 49, 54 (Bankr.S.D.Ohio 1985).

Accord, *In re I.A. Durbin, Inc.,* 62 B.R. 139 (S.D.Fla.1986); *In re Yale Express Systems, Inc.,* 11 B.R. 495 (Bankr.S.D.N.Y. 1981).

The same result had been reached by the courts in dealing with the jurisdictional limitations of the predecessor Bankruptcy Act. In the case of *Morrison v. Rocco Ferrera & Co.,* 409 F.Supp. 1364 (E.D. Mich.1975), the court held that the filing of a counterclaim by a creditor in response to a complaint by the debtor was "an unequivocal consent to the bankruptcy court's jurisdiction when done without objection." *Ibid* at 1370. That decision was affirmed

by the Sixth Circuit with that court holding:

> If we were to determine that Rocco's claim was adverse, not merely colorable,, and thus that Rocco was entitled to plenary proceedings, the burden was on Rocco at the time of the reference of the matter to Judge Bobier to object to the power or to the nature of the proceedings before the bankruptcy judge. Rocco did not object to jurisdiction before Bankruptcy Judge Bobier during the Chapter X proceedings. In fact, on November 13, 1974, Rocco filed an answer to Atlas' complaint and asserted an affirmative counterclaim of its own against Atlas. Rocco will not now be heard to complain that the bankruptcy judge was without jurisdiction to entertain the controversy pursuant to the reference from the District Court sitting as a reorganization court. *In re Morrison v. Rocco Ferrera & Co.*, 554 F.2d 290, 297 (6th Cir.1977).

Accord, *In re Engineers Oil Properties Corp.*, 72 F.Supp. 989 (S.D.N.Y.1947).

Congress, in reacting to the mandate of *Marathon*, established the new jurisdictional concept for the bankruptcy court in the provisions of 28 U.S.C. § 157(b)(2). The scope of "core" proceedings encompasses a wide litany of matters including:

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

■ Clearly, the bankruptcy court should not, under the guise of adjusting the debtor-creditor relationship, take jurisdiction over and finally adjudicate pure state-law *Marathon* type cases. But when the defendant in such a case elects to pursue claims against the estate, whether through filing a proof of claim or by asserting a counterclaim (which is, after all, nothing more than a claim against the estate, the allowance or disallowance of which is the most "core" of any kind of proceeding), the resolution of those conflicting claims surely is the adjustment of the debtor-creditor relationship. As such, it becomes a mutually core matter within the meaning of § 157(b)(2)(O), and treating it as such is in accord with the line of cases exemplified by *Morrison v. Rocco–Ferrera, supra,* and the like cases above discussed. Further, the resolution of such disputes being a core proceeding, there is no right to a jury trial on the issues. *Hauytin v. Grynberg, supra; In re Honeycomb, supra; In re Durbin, supra; In re Kroh Brothers, supra; Inter–State National Bank of Kansas City v. Luther, supra.*

■ In summary, this Court concludes that pursuant to *Schor* and *Thomas, supra,* the consent referred to in 28 U.S.C. § 157(c)(2) need not be express and can be manifested by a defendant in an otherwise non-core proceeding commenced in the bankruptcy case seeking relief against the debtor or the debtor's estate by the filing of a counterclaim or proof of claim.[2] The Court further concludes that if such consent is given, whether express or implied by or from the actions of the defendant, the entire proceeding shall then be treated as a core matter pursuant to 28 U.S.C. § 157(b)(2)(O) as to which the parties have no right to a trial by jury.

## III

### FACTS

■ The complaint in adversary 135 was first filed on February 27, 1987, and

---

**2.** These cases were filed prior to August 1, 1987, the effective date of the amendments to the Bankruptcy Rules which now specify that in non-core proceedings final orders and judgments may not be entered on the bankruptcy judge's order "except with the express consent of the parties." Prior to the adoption of those Rules, it had been recognized that the consent can, in fact, be implied by waiver or failing to act and need not be express. *In re Jennings,* 83 B.R. 752 (D.Nev.1988). As the Ninth Circuit observed in referring to 28 U.S.C. § 157:

> The 1984 Act, on the other hand, does not, on its face, require explicit consent. The fact that Congress failed to include any provision for explicit consent in the 1984 Act indicates that consent implied from the parties' actions is sufficient. *In re Daniels–Head & Associates,* 819 F.2d 914, 918–19 (9th Cir.1987).

the first amended complaint was filed on May 13, 1987. The complaint in adversary 437 was filed on June 15, 1987. In response to these complaints, the defendants filed a variety of motions, including motions to dismiss for lack of jurisdiction and motions to dismiss for failure to state a claim. A preliminary hearing was held on June 19, 1987, to deal with initial scheduling matters.

On September 29, 1987, a Rule 16 scheduling conference was held on a consolidated basis in adversaries 135 and 437. The purpose of that conference was primarily to deal with the scheduling of discovery and a comprehensive discovery order was entered which provided for discovery to commence in the fall of 1987. Such discovery has continued unabated since that time.

On June 22, 1988, the Court held a further scheduling conference. At that conference, among other things, the Court set these cases for trial to commence in March 1989. Not one objection was voiced to that trial setting. As of June 22, 1988, none of the present defendants in either case had asserted the right to trial by jury.[3] The Court also then set deadlines for the filing of motions to withdraw reference in the cases. Those deadlines and the trial setting prompted the subsequent filing of various jury demands, the filing of a counterclaim in Case 135 premised on securities' laws violations, and motions to withdraw reference on the grounds that the resolution of these cases would then involve issues under title 11 and other laws of the United States regulating activities affecting interstate commerce. Those motions to withdraw reference remain pending in the United States District Court.

As the Court noted at the outset of the opinion, an analysis of the status of these cases is complicated by the fact that there are multiple claims for relief against multiple parties and not all claims for relief are stated as against all defendants. Further, the defendants in each of the cases have variously filed, or sought leave to file, proofs of claim, counterclaims, crossclaims, third-party complaints and jury demands.

Tables setting forth the significant factors in each case are appended as exhibits to this opinion. In analyzing the Plaintiff's motion to strike jury demands, the Court must focus separately on each case and each jury demand in light of the rules of law above established.

A. *Case 135.* In case 135 jury demands as to the issues raised in the complaint have been asserted by the Defendants Frates, Holmes, Merrick, Doyle, Black, Gould, Allen, Girard, Gary, Hansen, Brokaw, Dean Witter and the Perma/Frates Joint Venture. Of these defendants, all have asserted or attempted to assert counterclaims against Kaiser, the Debtor in this Chapter 11 proceeding, except the Defendants Black and the Perma/Frates Joint Venture. Mr. Black, however, has filed a proof of claim in Kaiser's estate.[4] Thus, all of said defendants except Perma/Frates Joint Venture have consented to this Court hearing the issues raised by the complaint in this adversary proceeding as a core matter.

As to the Perma/Frates Joint Venture, claims are only asserted against it in the Tenth and Eleventh Claims for Relief in the complaint. Those claims, as analyzed above, arise under 11 U.S.C. §§ 544 and

---

**3.** In Case 135 jury demands were filed by the defendants Southern California Edison, Mission Land and Associated Southern Investment Co. on June 1, 1987. However, the only claims stated against those entities were in the last four claims for relief which this Court has already determined to be core proceedings and not subject to trial by jury. The claims against these defendants have since been dismissed.

**4.** Mr. Black also argues that he has always challenged this Court's jurisdiction and thus cannot be deemed to have consented by filing a proof of claim. The Court observes, however, that the jurisdictional objection raised by Mr. Black was addressed to the question of whether, as a nonresident of the state of Colorado, he was constitutionally subject to service of process under the provisions of B.R. 7004(d). This Court denied Mr. Black's objection on those grounds and held that he was subject to the *in personam* jurisdiction of the Court, having been properly served by mail with the summons and complaint. No further objection was made to this Court's jurisdiction except that Mr. Black now seeks a trial by jury on the claim stated against him in the complaint.

550 and are core proceedings as to which there is no right to a trial by jury.

B. *Case 437.* In case 437 a jury demand has been filed by the Defendant Yeagley. Mr. Yeagley has not filed a claim or a counterclaim herein. Mr. Yeagley did file an answer to the complaint on September 25, 1987, but did not file a jury demand until November 8, 1988. The last pleading directed to the Plaintiff's complaint was filed herein on October 19, 1987. Mr. Yeagley's jury demand was therefore not timely and is ineffective.

Various defendants have recently filed, or sought leave to file in both proceedings, third-party complaints against other persons or entitles asserting claims for contribution or indemnity. Similarly, various defendants have filed, or sought leave to file, cross-claims against other defendants also seeking indemnification or contribution in one form or another. Jury demands have been asserted in each instance on these claims. The Plaintiff has moved to sever these claims for trial.

A chief purpose of the bankruptcy laws is to achieve the expeditious and economical administration of debtors' estates. *Katchen v. Landy, supra; Bailey v. Glover,* 88 U.S. (21 Wall) 342, 22 L.Ed. 636 (1874). Thus, this Court ought not to be drawn into determining disputes between third parties, the resolution of which will not advance the administration of the bankruptcy case pending before it.

Congress has recognized the limited focus of bankruptcy proceedings. Jurisdiction of the district court under 28 U.S.C. § 1334 (and thus of this Court under the order of reference issued pursuant to 28 U.S.C. § 157) is limited to civil proceedings arising under title 11, or arising in or related to cases under title 11. In order for a proceeding to fall under the "related to" jurisdiction of § 1334, the resolution of the matter must have some effect on the administration of the bankruptcy estate. *Pa-*

*cor, Inc. v. Higgins,* 743 F.2d 984 (3rd Cir.1984).

It is clear that the cross-claims and third-party claims being asserted by the defendants are not "core" proceedings. Further, the determination of whether a defendant, who has been found liable for damages on the Plaintiff's complaint, should be allowed to recapture his loss from another defendant or some third party cannot be said to have any effect on Kaiser's estate or the underlying bankruptcy case. Thus, the Court has concern about whether there is any jurisdiction in this forum to hear such claims. See, *In re Fietz,* 852 F.2d 455 (9th Cir.1988).

These adversary proceedings are presently set for trial commencing in April 1989. It is estimated that the trial of these matters will consume four to six months of trial time. The Court has already stricken certain of the third-party complaints finding that allowing such complaints to be filed approximately a year and a half after these cases were commenced and four months prior to trial would unreasonably delay the resolution of the Plaintiff's claims herein.[5] Similarly, if the cross-claims and remaining third-party claims are to be tried to a jury as a part of the main case, the obvious result is that these cases would then have to be transferred to the district court for rescheduling, resetting and trial, thereby resulting in further delay. Such a result is directly contrary to the mandated purpose of the Bankruptcy Code to achieve the expeditious and economical administration of the debtor's estate. *Katchen v. Landy, supra.*

Under the circumstances, the proper approach is to grant the Plaintiff's motion and sever for trial purposes the defendants' cross-claims and third-party claims. This results in the prompt trial of the Plaintiff's claims and preserves to the defendants the right to a jury trial on the indemnification type claims asserted among them and by them against third parties.[6] It fur-

---

5. The Court currently has pending before it additional motions to strike or dismiss all remaining third-party complaints and all cross-claims. Those motions have not yet been heard.

6. Severing the trial of the equitable "core" issues to be heard by this Court from the legal claims submitted by the cross-claims and third-party complaints does not impermissibly impair the defendants' right to a jury trial on the legal

ther avoids the necessity of prolonging the trial of these cases in the first instance to consider evidence on issues which will, in any event, become moot if the Plaintiff does not prevail on its claims against the defendants.

## IV

### ORDER

Pursuant to the findings made above,

IT IS ORDERED, that the jury demands pertaining to the matters at issue by reason of the complaints and which have been filed:

A. In case 135 by the Defendants Frates, Holmes, Merrick, Doyle, Black, Gould, Allen, Girard, Gary, Hansen, Brokaw, Dean Witter and the Perma/Frates Joint Venture; and

B. In case 437 by the Defendant Yeagley, ARE HEREBY STRICKEN. The matters at issue pursuant to the complaints filed in said cases will be tried by this Court as core proceedings pursuant to 28 U.S.C. § 157(b)(2) and judgment will be entered by this Court as the facts and law are determined at the time of trial; and

IT IS FURTHER ORDERED, that the issues presented by the various cross-claims and third-party complaints which have been filed herein, to the extent the same are not hereafter dismissed, will be severed for trial at a later date in this Court or the United States District Court as may be appropriate.

### SUPPLEMENTARY TABLES

### CASE NO. 87 E 135

| PARTY | COMPLAINT/ CLAIMS AGAINST | C/CLAIM OR PROOFCLM FILED | JURY DEMAND* |
|---|---|---|---|
| Donaldson, Lufkin | 7,10,11 | yes | no |
| Winn, Eustace | 3 | yes | no |
| So. Cal. Edison | 9,10,11 | yes | no |
| Mission Land Co. | 9,10,11 | no | no |
| Assoc. So. Investment | 9,10,11 | yes | no |
| No. Cimarron Res. | 9,10,11 | yes | no |
| Frates, Joseph A. | 3,4 | yes | yes |
| Holmes, Charles | 3,5,10,11 | yes | yes |
| Merrick, Robert | 3,5,10,11 | yes | yes |
| Doyle, Stan | 5,10,11 | yes | yes |
| Equivest | 5,10,11 | yes | no |
| Prudden, Peter | 5,10,11 | yes | no |
| Frates, J. Anthony | 5,10,11 | yes | no |
| Frates, Stephen | 5,10,11 | yes | no |
| State Fed. S & L | 12 | yes | no |
| Rial, Monty | 3,4 | yes | no |
| McNeil, Charles | 3,4 | yes | no |
| Perma Resources | 5,9,10,11 | yes | no |
| Perma Mining | 5,9,10,11 | yes | no |
| Calder & Co. | 5,9,10,11 | yes | no |
| Chimney Rock | 5,9,10,11 | yes | no |
| Energy Capital | 5,9,10,11 | yes | no |
| Aztec | 5,9,10,11 | yes | no |
| Colo. Coal Res. | 5,9,10,11 | yes | no |
| Colo. Coal Mining | 5,9,10,11 | yes | no |
| Samuels, H. Estate of | 5,10,11 | yes | no |
| Brokaw, Clifford | 5,10,11 | yes | yes |
| Black, Charles | 1,4 | yes | yes |
| Gould, William | 2 | yes | yes |
| Allen, Howard | 2 | yes | yes |

issues, even though there conceivably may be some *res judicata* effect from this Court's decision on the equitable issues. *Katchen v. Landy, supra,* 86 S.Ct. at 477–78.

| PARTY | COMPLAINT/ CLAIMS AGAINST | C/CLAIM OR PROOFCLM FILED | JURY DEMAND* |
|---|---|---|---|
| Perma/Frates Jt. Ven. | 10,11 | no | yes |
| Girard, Stephen | 1 | yes | yes |
| Gary, Richard | 1 | yes | yes |
| Hansen, Lloyd | 1 | yes | yes |
| Dean Witter | 8,10,11 | yes | yes |
| Sierra Gateway | 12 | no | no |
| Perma Pacific Prop. | 5,9,10,11 | yes | no |
| Perma Pacific | 5,9,10,11 | yes | no |

* Exclusive of jury demands made in connection with cross-claims or third-party complaints.

### CASE NO. 87 E 437

| PARTY | COMPLAINT/ CLAIMS AGAINST** | C/CLAIM OR PROOFCLM FILED | JURY DEMAND*** |
|---|---|---|---|
| Winn, Eustace | 1–4,6–9 | yes | no |
| Frates, Joseph A. | 2–9 | yes | no |
| Holmes, Charles | 2–4,6–9 | yes | no |
| Merrick, Robert | 2–4,6–9 | yes | no |
| Doyle, Stan | 2,3,6,7,9 | yes | no |
| Equivest | 2,3,6–9 | yes | no |
| Prudden, Peter | 2,3,6,7,9 | yes | no |
| Frates, J. Anthony | 2,3,6,7,9 | yes | no |
| Frates, Stephen | 2,3,6,7,9 | yes | no |
| Rial, Monty | 1–9 | yes | no |
| McNeil, Charles | 1–9 | yes | no |
| Perma Resources | 1–3,6–9 | yes | no |
| Perma Mining | 1–3,6–9 | yes | no |
| Chimney Rock | 1–3,6,7,9 | yes | no |
| Energy Capital | 1–3,6,7,9 | yes | no |
| Aztec | 1–3,6,7,9 | yes | no |
| Colo. Coal Res. | 1–3,6,7,9 | yes | no |
| Perma Pacific | 1–3,6–9 | yes | no |
| Gould, William | 12 | yes | no |
| Allen, Howard | 12 | yes | no |
| Girard, Stephen | 11 | yes | no |
| Gary, Richard | 11 | yes | no |
| Hansen, Lloyd | 11 | yes | no |
| Farrell, J.L. | 2,3,6–9,11 | no | no |
| Yeagley, M.G. | 5 | no | yes |
| Black, Charles | 5,11 | no | no |
| Winria | 1–3,6–9 | no | no |
| FCD Oil | 1–3,6–9 | no | no |
| Doyle & Holmes | 2,3,6,7,9 | yes | no |
| Equivest Management | 8 | no | no |
| Asset Management | 8 | no | no |

** The Tenth Claim for Relief is stated against unidentified insiders who received transfers within one year of the date of filing of the petition.
*** Exclusive of jury demands made in connection with cross-claims or third-party complaints.